# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,<br><br>    Appellant,<br><br>v.<br><br>RICHARD DEGUISEPPI,<br><br>    Appellee. | Case No. 1:18-cv-1457 |

## ORDER & OPINION

    This matter is before the Court on appeal from the Bankruptcy Court's December 10, 2018, order sustaining in part Appellee Richard DeGuiseppi's objection to Appellant JPMorgan Chase Bank, National Association's, escrow shortage component of its proof of claim. The Court denies Appellant's request for oral argument (Doc. 5), finding the matter can be decided on the papers. Appellant has briefed the matter (Doc. 4), but Appellee failed to file a timely brief.

    Part VII of the Federal Rules of Bankruptcy Procedure does not set forth rules governing an undefended appeal. *Acevedo v. SC Real Estate LLC*, 526 B.R. 761, 763 n.1 (N.D. Ill. 2014). However, the rules do provide that when there is no controlling law "[a] district court . . . may regulate practice in any manner consistent with federal law, applicable federal rules, the Official Forms, and local rules." Fed. R. Bankr. P. 8026(b)(1). The Northern District of Illinois, faced with an identical situation, followed the Seventh Circuit's practice and "decide[d] the appeal 'solely on the brief of the appellant.' " *Acevedo*, 526 B.R. at 763 n.1 (quoting *Instituto Nacional de*

*Comercializacion Agricola (Indeca) v. Continental Ill. Nat'l Bank & Tr. Co.*, 858 F.2d 1264, 1270 (7th Cir. 1988) and citing 7th Cir. R. 31(d)). This procedure is similar to Local Rule 7.1(B)(2), which provides, "[i]f no response is timely filed, the presiding judge will presume there is no opposition to [a] motion and may rule without further notice to the parties." The Court, in its discretion under Rule 8026(b)(1), will follow the Northern District as well as Local Rule 7.1(B)(2) and rule on the matter solely on Appellant's brief. Therefore, the matter is ripe for review.

## **BACKGROUND**

Appellee filed for bankruptcy on June 19, 2018. (Doc. 2 at 1). At that time, Appellee had a mortgage held by Appellant. (Doc. 2-1 at 2, 14-23). Pursuant to the mortgage, Appellee was required to make monthly payments to Appellant to fund an escrow account from which taxes and insurance on the mortgaged property were paid. (Doc. 2-1 at 15). Appellant was empowered to collect and hold funds not exceeding the maximum allowed by law. (Doc. 2-1 at 15). Additionally, if the amount in the escrow account was insufficient to pay the taxes and insurance, the contract allowed Appellant to require Appellee "make up the shortage" as allowed by applicable law. (Doc. 2-1 at 16).

The regulatory structure defines several terms precisely. An escrow deficiency is "the amount of a negative balance in an escrow account," representing actual expenditures above the amount the mortgagor contributed to the account. 12 C.F.R. § 1024.17(b). A "shortage" is "an amount by which a current escrow account balance falls short of the target balance at the time of escrow analysis." 12 C.F.R. § 1024.17(b).

2

"Target balance means the estimated month end balance in an escrow account that is just sufficient to cover the remaining disbursements from the escrow account in the escrow account computation year, taking into account the remaining scheduled periodic payments, and a cushion, if any." 12 C.F.R. § 1024.17(b). So, an escrow shortage represents the difference between what the account will have at the end of a given annual period and what the account should have, assuming scheduled future payments are made.

Federal Rule of Bankruptcy Procedure 3001(c)(2)(C) provides "[i]f an escrow account has been established in connection with [a] claim" for a security interest in the debtor's principal residence, "an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim." The applicable nonbankruptcy law, the Real Estate Settlement Procedures Act (RESPA) and its implementing regulation, Regulation X, allow servicers to "issue a short year annual escrow statement" in such circumstances, which resets the computation year. 12 C.F.R. 1024.17(i)(4).

Appellant prepared an account statement as of the date the petition was filed. Relying on this statement, Appellant's proof of claim sought $5,059.19 as a prepetition escrow arrearage, a $3,980.67 escrow deficiency plus a projected escrow shortage amount of $1,078.52.[1] (Doc. 2 at 11). In performing the projected escrow

---

[1] Appellant credited Appellee $0.42 "[a]s part of [its] process of completing the POC form"; the full projected escrow shortage was therefore $1,078.94. (Doc. 4 at 9 n.2).

3

shortage calculation, Appellant treated the balance of the escrow account as though it were $0.00. (Docs. 2-1 at 26; 4 at 16).

The proof of claim was filed on August 28, 2018. (Doc. 2-1 at 3). Appellee filed an objection to Appellant's proof of claim. (Doc. 2 at 9). The essence of the objection was that the projected escrow shortage cannot be prepetition debt because any shortage here would occur after the filing of the petition; Appellee therefore believed the projected escrow shortage should be excluded from the proof of claim. (Docs. 4 at 10-11; 3 at 2). In response, Appellant argued the inclusion of the projected escrow shortage as prepetition debt was proper pursuant to RESPA and the bankruptcy rules and forms. (Doc. 2 at 11).

The Bankruptcy Court largely sustained Appellee's objection (Doc. 2 at 19). However, the Bankruptcy Court determined, based on its understanding that Appellee's monthly payment was $288.90 and that he had missed fourteen payments, the escrow account should have had $4,044.60 at the time the petition was filed—$63.93 more than was the escrow deficiency. (Doc. 3 at 4-5). The Bankruptcy Court therefore allowed only $63.93 of the requested amount, reducing the claim by $1,014.59 ($1,078.52 less $63.93). (Doc. 2 at 19). This appeal followed.

## LEGAL STANDARD

In reviewing a bankruptcy court's decision, "[q]uestions of law are considered *de novo* and factual findings receive clear-error scrutiny." *Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with

4

the definite and firm conviction that a mistake has been committed." *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## **DISCUSSION**

It is apparent from the transcript that the Bankruptcy Court calculated the total arrearage from missed escrow payments rather than the projected escrow shortage, which is a technical and complex calculation detailed in RESPA and its implementing regulations. (Doc. 3 at 5). The Court suspects this occurred because the original escrow analysis was less than clear and counsel merely directed the Bankruptcy Court back to the escrow analysis during the hearing rather than explaining the difference between what the Bankruptcy Court colloquially termed an escrow shortage and the projected escrow shortage, as defined in RESPA. (Doc. 3 at 5). It also appears that the original documentation did not include a Mortgage Proof of Claim Attachment on Official Form 410A, although all the necessary information may have been contained within the various forms actually submitted. At any rate, this Court may affirm a bankruptcy court on grounds not stated in its opinion. *See In re Snyder*, 152 F.3d 596, 599–600 (7th Cir. 1998). Thus, it is necessary to determine whether a projected escrow shortage is indeed prepetition debt in a Chapter 13 bankruptcy proceeding and, if so, whether Appellant's calculation is correct.

The Court concludes projected escrow shortages may constitute prepetition claims. "Claim" includes a "right to payment, whether or not such right is . . . . fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

5

unsecured." 11 U.S.C. § 101(5). Regulation X, provides that in the case of a projected escrow shortage, "[t]he servicer may allow a shortage to exist and do nothing to change it," or "[t]he servicer may require the borrower to repay the shortage in equal monthly payments over at least a 12-month period." 12 C.F.R. § 1024.17(f)(3)(ii). Additionally, if the shortage is less than the amount of one payment, "[t]he servicer may require the borrower to repay the shortage amount within 30 days." 12 C.F.R. § 1024.17(f)(3)(i)(B). Therefore, RESPA allows a claim for a projected escrow shortage at the time it is calculated, not only when a shortage occurs, indicating in this context it can be a prepetition claim. The Instructions for Mortgage Proof of Claim Attachment (Official Form 410A) support this interpretation; they state the total prepetition arrearage should include the projected escrow shortage. (Doc. 4 at 28).

Appellant correctly notes "servicers must use the aggregate accounting method in conducting escrow account analyses." 12 C.F.R. § 1024.17(c)(4). However, the aggregate accounting method calculates the maximum target account balance allowed rather than setting a required target account balance. Regulation X directly rebuts the claim that the maximum target account balance necessarily reflects the amount the escrow account should have. "The steps set forth in this section result in maximum limits. Servicers may use accounting procedures that result in lower target balances. In particular, servicers may use a cushion less than the permissible cushion or no cushion at all. This section does not require the use of a cushion." 12 C.F.R. § 1024.17(d)(1). The method itself also specifies it is only calculating the maximum permissible target balance rather than a mandated target balance; "target balances

6

may not exceed the balances computed according to the following arithmetic operations" and "[t]he target balances that the servicer derives using these steps yield the maximum limit for the escrow account." 12 C.F.R. § 1024.17(d)(2)(i-ii).

Determining what the target balance is for a given account is a matter of interpreting the contract between the parties. *In re Rodriguez*, 629 F.3d 136, 142 (3d Cir. 2010) ("[T]he loan documentation is relevant in determining whether there is an obligation to make an escrow payment and whether that obligation is enforceable.") (citing *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354 (5th Cir. 2008)). Appellant does not address whether Appellee's contractual obligation involved paying a cushion. The contract itself, however, allows Appellant to "at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required" under RESPA "except that the cushion or reserve permitted by RESPA . . . may not be based on amounts due for the mortgage insurance premium." (Doc. 2-1 at 15). This language entitled Appellant to seek the maximum target balance. As a contractual matter, therefore, Appellant had a right to collect the full cushion allowed by RESPA (less the amount that would have been based on the private mortgage insurance premium) as well as any projected escrow shortage. *See Rodriguez*, 629 F.3d at 142.

Appellant's calculations appear to be in accord with Official Form 410A, and the Court does not see error in their ultimate result. Therefore, Appellant was entitled to the full $1,078.52 it sought in its proof of claim.

## CONCLUSION

The Bankruptcy Court's December 10, 2018, order sustaining in part Appellee Richard DeGuiseppi's objection to Appellant JPMorgan Chase Bank, National Association's, escrow shortage component of its proof of claim is REVERSED and the matter is REMANDED to the Bankruptcy Court for any further proceedings necessary to terminate Appellant's claims.

SO ORDERED.

Entered this 18th day of April 2019.

/s Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
